Good morning, Your Honors, and may it please the Court. My name is Lara Gressley, and I represent the petitioner-appellant Brittany Ann Ingrassi. I'd like to reserve five minutes for rebuttal with the Court's permission, and I will keep track of my time. This morning, Your Honor, I'd like to focus on the issues surrounding the ineffective assistance of counsel claims, specifically with regard to the failure of trial counsel to challenge the intoxication evidence and the resulting prejudice. Now Ms. Ingrassi was denied her right to effective assistance of counsel long before the trial began. The first failure of trial counsel was to fail to file a motion to suppress evidence. Now this was a warrantless blood search, and we do have an under oath statement from the petitioner in a declaration stating that she did not freely and voluntarily consent. The district court found that there was no contemporaneous evidence, they called it of no consent, but I submit to the court that mere acquiescence to the law enforcement's authority to take the blood sample and merely submitting it is not valid consent, that's not sufficient. Let me ask you this, as I'm sure you're aware, there's plenty of evidence against your client unrelated to intoxication, and it's certainly not implausible that a caregiver could abuse a child while sober. Under the circumstances, why would she be prejudiced by the admission of the intoxication evidence? Your Honor, there's several reasons, not the least of which is that there were two witnesses that testified to Ms. Ingrassi's good character, testified about how her entire adult life she had been watching children, caring for the children, she was the go-to babysitter, peaceful character, loving, caring with children, who by all accounts adored Aiden, who was actually her longtime fiancé's cousin's child. That's all well and good, but as you know, there's lots and lots of evidence, the blood, the carpeting, all kinds of other things. Yes, Your Honor. That gets back to my other point, there's lots and lots and lots of evidence that point to activity by your client that could be culpable, and the intoxication seems to be just kind of really a minor point. You can abuse a child whether or not you are intoxicated. Why is intoxication a big deal here? If the court would bear with me with regard to the character witnesses, I'll explain that briefly why that matters. Because in California, the jury instruction says the character evidence, good character evidence can by itself establish a reasonable doubt. Now the prosecution asked the one question, have you ever seen her intoxicated? The answer was no, they'd never seen her intoxicated, especially while caring for children. So it obliterated her character evidence, first of all. Second of all, the prosecution argued, they came up with a scenario that she was essentially hitting the baby's door up, hitting the baby's head on the door, hitting the baby's head on the crib, recklessly pulling the child up, fumbling about, dropping the child as though she were drunk. This was their argument in closing, Your Honors. And also in closing, the prosecution did say she was drunk while she was caring for Aiden. They didn't know when she drank because there was no evidence of any alcohol consumption whatsoever, which was never investigated because it doesn't reconcile with the blood alcohol results at all. There was no odor, no symptomology, nothing. And while I understand the court's point, I'm trying to share with the court my perspective on this, which is there was no motive. There was no motive. She had been perfectly fine with this child for six weeks, watching him every day, all day long, no incidences. So they had to explain, how is this possible that this person who had never done anything wrong, a CPA, 30-year-old CPA student, would have done this? That's how they explained it, angry drunk, that's what they said. I guess my concern is this, you're phrasing this as an IAC issue. Yes, Your Honor. And the reality is, with the massive amount of evidence against your client, to me, I just don't get it. I don't think, even if you're 100% correct, even if we say, well, they handled that wrong, I don't see where that changes the outcome in light of the massive amount of other information. Where's the prejudice on this? Where is the prejudice? There were so many instances of ineffective assistance of counsel. It's not just the intoxication evidence, but it was egregious because without it, you had a completely sober person with no reason, no motive, nothing, to murder an infant? This was a family member's infant, essentially, for her. There was just absolutely no explanation for how they had to explain it with a personality change. That's why they brought up text messages between her and her fiancé about how when she drank, it changed her personality, she became angry. They had to do that. So, challenging it was critical, but there were other instances of ineffective assistance of counsel with respect to presenting the defense, which was that this French bulldog had, in fact, inflicted these injuries. And there was plenty of evidence about that, but it was so ineffectively done. In fact, in one instance, I'll tell you right here, the dog expert, Jill Kessler Miller, had prepared videos that had detailed examples of exactly how the dentition matched the bruising, how everything matched up, but she was not able to present them because trial counsel failed to provide transcripts, and that's a California rule of court, so the court excluded the videos. So, then she began fumbling through this unprepared testimony because trial counsel didn't meet with her ahead of time, and we have that declaration in the record to show that. We had a 39-year-experienced pathologist testify, 100% believes that Ms. Ingrassi is innocent, that the dog inflicted these injuries, but yet wasn't given the skull x-rays before trial. Now, the district court says that he was, but that is clear in the record that he was not, and he did sign a declaration as well saying he never got the skull x-rays. Compare that with the coroner who had under two years' experience, and he testified that he did, the other error I wanted to point out that the district court made was that the district court concluded that he had seen three or four infants who had suffered dog attacks. That's not what the testimony revealed, absolutely not, and that was not brought out by trial counsel either. So, the only reason that the jury would have believed that under two years' experience coroner versus the 39-year-experienced Dr. Pietruska, the pathologist, is because he didn't have the right information. So, it was definitely a confluence of events, Your Honor. It was not just the ineffectiveness with respect to the intoxication evidence here. Well, but doesn't the point you are just making now reinforce Judge Smith's point about how irrelevant the alleged intoxication was? The issue, as was put to the jury, was it's either the defendant or the dog that did this, and whether or not she was intoxicated or not when she did it was not anything more than a side issue. The critical issue was it was either her or the dog, and the jury found it was her. Your Honor, I respectfully disagree with that, and I ask the court to consider whether if you have a person who's on trial for child murder and there's evidence that they are highly intoxicated at the time they're caring for this tiny infant during the day at the person's apartment, whether that is incriminating, it absolutely is. And we're talking about there was one number of 0.22 blood alcohol level when the expert did retrograde calculations, which were not reliable as is stated in my- Well, if the dog did not do it, then the only other possibility would be that your client did. Yes? Your Honor, yes. But the problem with that is that it caused them to believe that she did it and not believe the dog because of, again, the flailing presentation, an inadequate presentation of that defense, but also because she was, well, her personality changes. They presented evidence that she was drunk, she was reckless. They actually took a rag doll into the courtroom and were swinging it around as though it was somebody just fumbling and going about and hitting the door and the cabinet as though she's highly intoxicated. The whole theory was based on that. Well, counsel, back to what my colleague just mentioned. I mean, my understanding is, I think it was the coroner, I may be wrong on who said it, but the dog's mouth was not big enough to get around the head of the baby. And that was basically the fatal impact was on the head of the baby. You had the issues of the broken arm for some time back. And again, the dog could not have done it. And as my colleague put it straightforwardly, the issue is, did the dog do it or the It seems to me that, you know, no trial is perfect. No lawyer is perfect. But when you look at the evidence, the overwhelming evidence involved here, the trial lawyer had some basically some strategy to decide which is the best way to go. Was it perfect? No, but that's not what Strickland requires. And more importantly, even if the prong one is met, I don't see where you satisfy prong two. What's the prejudice? Yes, your honor, I briefly like to speak to the dog. There was no allegation that this was a dog attack. It was a dog encounter. Now, Jill Kessler Miller, the expert testified that the dog's jaw came in like a battering him. It wasn't opening the mouth like to to bite. It was coming in, hitting the skull and then grabbing the arm and shaking like a toy. So this was not an aggressive attack. It was using this tiny little baby as a play toy. That was the explanation. But it was not done right. And that is the point about prejudice is that it had to be both. She had to present that evidence effectively, but she also had to attack the other evidence about the intoxication because that is what gave the prosecution their theory in the case. Absolutely. One hundred percent. I believe that if she had done both of those things, Miss Ingrassi would not have been convicted. Miss Ingrassi is innocent, as the dog expert testified, as Dr. Pietruszka testified. She's innocent. And that is the prejudice is because this intoxication evidence is what filled the motive gap for the prosecution and caused the jury to convict her. And yet, as Judge Rakoff pointed out, and I think you agreed, the issue in this case is did the dog do it or did your client do it? The jury believed that your client did it. Looked at the evidence. You said the evidence was not presented in a proper way. But the reality is it was presented. Each of the points you're talking about in one way or another got in and the jury looked at the evidence and decided that your client did it and not the dog because it found it improbable. So how are we supposed to deal with that in terms of prejudice? In terms of prejudice, Your Honor, it's what Miss Kessler-Miller states in her declaration about how she was not able to present all of the evidence in the case, which was that the dentition and the paws matched up perfectly to the bruising and that the intoxication evidence just swayed the jury that, okay, well, I guess she can do something like this because these were deplorable acts that you couldn't believe that a person like Miss Ingrassi would ever do. And that's the point is that it was not presented in a way that was effective. There were so many failings as detailed in my briefs, Your Honor. And I'd ask that the court reverse the district court's order and grant the relief. Thank you, counsel. We'll hear from the government. All right. Good morning, Your Honors. Deputy Attorney General Taylor Wynn appearing on behalf of Respondent. We ask that the district court denial of habeas relief be affirmed on all claims because petitioner has failed to demonstrate any entitlement to relief and specifically focusing on the blood alcohol evidence. As Your Honors have stated, this case is viewed in the context of who did it. And the alcohol evidence, as the district court observed, was a very minor part of this case. And we can even skip right to prejudice, Your Honor. Even if assuming that counsel was successful in getting this discrediting the alcohol evidence and we even take that out, what is the jury left with? The jury is left with the physical evidence that shows a sober caretaker, brutally abusing, attacking a five-month-old baby, causing the baby to have skull fracture, bleeding of the brain, his lips were pulled from his gums, various bruising and lacerations. There was also evidence of smothering, that she smothered the baby. This is strong, overwhelming evidence of her guilt. And in addition to that, the jury is left with evidence that she, instead of seeking help for this baby who's injured and unconscious, she is on the phone with her fiance. She is cleaning up the crime scene and hiding evidence and destroying evidence by erasing her phone history. This is what the jury has in front of it. What about the other point made by Helen and counsel a minute ago, that if counsel had done a much better job of presenting their expert who said the dog could have done it, or even that the dog did do it, that that would have created a reasonable doubt? The expert that the defense presented did do a good job of presenting evidence that the dog did it. They looked at the dog expert, talked about paw print that can be found on the baby, talked about teeth indentations that could be found on the baby. And the pathologist also talked about skull injuries. And after viewing the x-rays, and I would submit, Your Honor, that the pathologist, the defense pathologist on his direct or in his cross-examination admitted at trial that he did see the x-rays before trial. And that's counter to his declaration that he submitted in this case. But the defense put on a very, very good case indicating the dog did this. And also character evidence. And essentially, petitioner is now taking the role of the jury and arguing that, well, counsel did all these things wrong, and all these things should be rejected. But the jury had before it the prosecution's evidence, physical evidence, evidence of petitioner's character evidence, evidence of petitioner's consciousness of guilt, and evidence that the dog did this crime. And it is the role of the jury to assess the evidence, assess the credibility, and make the decision and weigh the evidence and make the decision as to guilt. And that's what the jury did. It rejected the evidence that the dog did it. It rejected the character evidence that she was a loving caretaker based on the evidence that the prosecution here produced, which shows a brutal attack on a baby. The evidence of her guilt is just overwhelming. And I'll just note a few things. She's washing clothes to get blood off. She's hiding evidence deep in the trash. She's flipping over a rug that contains blood. She washes the baby of all blood, undresses him. And so there was no blood found on him, but his blood was found on her clothing. And if this really was a dog attack, there was no reason for her to do any of that. She should have just called 911. If her phone didn't work, she could have left the apartment and seek help in a neighbor. They lived in an apartment. So, therefore, it is the petitioner's burden to meet Strickland, having to show both prongs. And even if you jump straight to the prejudice prong here, the petitioner has failed to show prejudice, and therefore the claim must fail. Unless the court has any further questions for me, I will submit. It appears not, counsel. Rebuttal? Thank you, Your Honors. Just a few brief points, Your Honors. With respect to the x-rays and Dr. Pietruszka, his testimony is found in 8 ER 1611. He says, I never received them, talking about the x-rays. So there was some confusion because his reports said that he did. And initially in his testimony, he said that he did. But he clarified that later. It's in the record for the court to see. Also, Your Honor, with respect to her frantic behavior after these injuries. Now, she told police that she left the room, left the baby on a playmat, came back, and the dog was next to the baby. Now, obviously, the conduct in frantically trying to find out what's wrong with the baby, she said that the baby's face was red, and she undressed the baby and washed the baby and did all that. That is true. She's frantically trying to figure out what happened and also probably felt quite negligent for leaving the child with the dog. This was actually the first time the dog had been in the apartment with her when she was babysitting Aiden, which she had done for six weeks without the dog there. That was testimony from the father. So yes, there was some frantic behavior. The phone issue, Joseph Carlos called his cousin, the father, and said, you know, call the mother, come home quick. Her phone's acting up. I just called her. She was able to get my call. So this happened actually very close in time to when mother arrived. She's at the top of the stairs screaming for her to come upstairs. She's acting frantic to get care for the child. For whatever reason, her phone didn't work. It was speculated that it was erased, but that actually was not investigated by trial counsel and very well could have been something that happened with the phone because she had a crack in it, it was a problem. There was some evidence to that regard. But again, the ineffective assistance of counsel claims surrounding the intoxication evidence which gave the prosecution a motive and a theory to say why this person, who by all accounts loved and adored children all her life, did something so deplorable. And then on top of that, your honors, the flailing examination of Jill Kessler Miller, and that is in her declaration, she shuffled her photos out of order. She couldn't present the videos. So now she had to frantically try to present it to the jury in a meaningful way. It just was not done. And all of it could have been done if counsel had been effective. And I thank you for the court's time. And I appreciate you listening to me in these arguments. And I ask again that the court reverse the district court's order in order that petitioner be granted relief as prayed for in the petition. Thank you so much. Thank you, counsel. Thank you to both counsel for your helpful arguments. The case just argued is submitted for decision by the court.
judges: RAWLINSON, SMITH, Rakoff